## Hilda Watson v. The State.

No. 12594.   Delivered May 22, 1929.
Rehearing granted appellant January 15, 1930.
Rehearing denied State February 26, 1930.
Reported in 24 S. W. (2d) 830.

The opinion states the case.

*S. M. Burns* of Cameron, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for possessing intoxicating liquor for purposes of sale; punishment, eighteen months in the penitentiary.

Appellant and her husband lived together. The house was raided and 86 bottles of beer found which, upon analysis, had content of more than 5% of alcohol by volume. Fifty-five empty bottles were found scattered around, and an opened bottle not yet consumed was on the table. No one was present on the premises save appellant at the time of the raid. A capping machine and some extra caps, and a large jar were also found. Part of the full bottles of beer were in a case, part in a large box.

Appellant made a motion for severance, setting up that she was under indictment in causes 8802 and 8803, and that her husband was under indictment in causes 8800 and 8801. She alleged that said offenses grew out of the same transaction and transactions, and that there was not sufficient evidence against her husband in either case to warrant his conviction, and she prayed that he might be tried in each case before she was put to trial herein. The court below heard evidence, and his order overruling the motion for severance recites that cause No. 8800 against said husband was dismissed, and that in cause No. 8801 her husband was charged with manufacturing intoxicating liquor, and the court was of opinion that the instant case should be first tried. As we understand the record both causes against this appellant charged her with possession. The bill of exceptions complaining of the action of the court in refusing the severance is accompanied by the testimony of the appellant which was given in support of the motion. She testified on direct examination that the indictment against herself and her husband grew out of the same transaction, but on cross-examination she admitted she did not know what testimony the State would offer upon her husband's trial or what proof would be made therein. No other evidence was introduced. In our opinion the action of the court in declining to grant the motion for severance was justified. Practically the same questions were presented in Hill v. State, 95 Texas Crim. Rep. 585, and French v. State, 98 Texas Crim. Rep. 578.

The court told the jury that "possession" meant the actual personal care, control and management of the property. This was substantially correct. We know of no law exonerating a woman from conviction and punishment for crime merely upon her claim that her husband was the guilty party. The question is one of fact, and it is for the jury, and upon ample proof of the possession by a woman of a large quantity of alcoholic liquor, we would not feel justified in overturning the verdict of the jury adjudging her to be guilty of possession of same.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is earnestly insisted that the evidence is insufficient. Upon further consideration we think such contention sound. The court charged on the law of principals and also instructed the jury that mere presence at the place where the offense was committed was not sufficient to warrant a verdict of guilty. The state relied upon circumstantial evidence, and an instruction covering the subject was embodied in the charge. The circumstances were as follows: Officers found a large quantity of beer in the house occupied by appellant and her husband as a private residence. Appellant was at home at the time, while her husband was away. There was an open beer bottle with a small amount of beer in it on a table. Appellant was doing nothing in connection with the beer. The officers testified that they did not know who owned the beer. They further said that they did not know whether appellant had tried to sell any of it. Appellant's husband had been indicted for manufacturing and possessing for the purpose of sale the identical beer found by the officers. Appellant testified that the beer belonged to her husband, he having manufactured it. She denied that she had any connection with it whatever, and declared that she had at one time separated from her husband because of the fact that he persisted in making beer.

Appellant's husband was the head of the household. Appellant was in her proper place in the home when the raid was made. She was doing nothing in connection with the beer when the officers appeared. She was merely present in the home presided over by her husband. These facts show no more than appellant's bare presence at a place where it was proper for her to be. There is nothing to

show that appellant agreed to commit the offense or that she in any manner encouraged her husband in the commission of the unlawful act. Mere presence, in the absence of proof of having agreed to commit the offense, will not constitute one a principal. Branch's Ann. Tex. Penal Code of Texas, Sec. 681, page 347. With the case being tried on the theory that appellant aided her husband to commit the offense, the state failed to show more than that appellant was present in her husband's home when some beer was found therein.

The motion for rehearing is granted, the judgment of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Granted, and cause reversed and remanded.*

DISSENTING OPINION.

LATTIMORE, JUDGE.—I should like to agree to a reversal of this case on the ground of the insufficiency of testimony, but can not, bearing in mind that the statutes of this State make the jury the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, and that this court has said almost times without number that only where there is an entire absence of evidence from which guilt might be inferred, would this court set aside for lack of testimony a jury verdict of guilt.

In this case the law was being violated in the house occupied by appellant. Forbidden liquor was there possessed apparently for purposes of sale. The officers found a large quantity of same. Eighty-six full bottles and fifty-five empty ones, some quarts, some pints, were found; some bottles were found in a case, some in a box, some on the table, and some on the floor. A capping machine was there and a bunch of extra caps. No one was at the house at the time the officers went there save appellant. Her husband was working at an oil mill at the time. The sheriff testified without objection that they had "searched her premises several times and found beer up there at different times." Appellant swore that she did not know anything about the beer; that if her husband made it she did not see him when he made it. She further swore that *her mother* refused to come to "My house on account of this stuff being there." It is a little difficult to conceive how appellant's mother could know of the presence of the liquor and abstain from coming, and yet appellant know nothing about it. Further appellant testified that she had separated from her husband on account of his making and selling beer, but in this connection she said "That was off and on; that was

when *they caught us* before and poured the mash out." Further she said "John made this on Friday; he took it off." Asked if the following was not true, she said: "Last year when they raided my house, Carson drove up with a lot of empty bottles in his car; he was out there in front of the house." Asked in reference to a bottle of beer which the officers said they found open on a table in the house, she said: "There was not a bottle left there undrunk on the table when Mr. Pope and Mr. Sens were there. There was not a bottle open when they came down there." In its rebuttal the State showed that a bottle about half full of beer was open on the table in the house occupied only by appellant at the time of the raid.

It seems to the writer that if appellant was a man, situated as she was when found by the officers, there would be no hesitation in upholding the verdict of the jury.

The court safe-guarded appellant's rights. He told the jury that her mere presence when and where the liquor was possessed would not make her a principal offender, and that even though she knew her husband possessed said beer, they could not convict her unless they found from the evidence that she aided him by acts or encouraged him by words or gestures in the unlawful possession thereof, and that if they had a reasonable doubt of such facts they should acquit. The court also charged on circumstantial evidence.

In conclusion I can but call attention to the effect of a holding such as this. If the husband should be charged with the possession of the liquor, it would be shown beyond question that he was not present and was exercising no sort of possession of or claim to it, hence his acquittal would be made necessary. We have in this record a plain case of a woman in all likelihood the actual head of the household, who was alone in a house where beer bottles were scattered all over the place, and no one else appeared to be exercising any right of possession. The jury considered the facts. They saw the witnesses. Similar situations to this, as above observed, where the offender is a man, need no room for even discussion. I can not agree to this reversal.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—If the writer comprehends the facts, John Watson and Hilda Watson, were husband and wife. They lived together in their private residence. A search of the residence revealed the presence of a quantity of beer. At the time of the search John Watson was not present. Hilda Watson was at

their home. They were each indicted for the possession of intoxicating liquor. An effort upon the part of the appellant to have her husband first tried resulted in a dismissal of the case against him for possession. He was also under indictment for the manufacture of the same liquor. Other than the finding of the liquor at the home, the presence of the appellant, Hilda Watson, and the fact that she was the wife of John Watson, there is in the record no evidence of her guilt. She might have been a principal offender with her husband in the possession of intoxicating liquor for the purpose of sale, but her conviction of that offense would be justified upon proof not only that she was present in her home but that she agreed to. the commission of the offense by her husband or that she aided or encouraged him in the commission of the offense.

The appellant testified.that she had nothing to do with the making of the beer; that on some former occasions she had separated from her husband because he had persisted in making beer. There was no direct evidence that any liquor had ever been sold upon. the premises. There was direct evidence that the particular liquor seized as the result of the search was made by the husband of the defendant. All the State's witnesses disclaimed having any knowledge of the appellant having anything to do with the making and selling of the liquor. Reliance was had upon the fact that the place was searched and liquor found. She was at home but her husband was not there. It was in evidence from the State's testimony and undisputed that her husband lived with her at the place where the beer was found.

Our statute, Art. 33, P. C., 1925, takes note of the fact that in the domestic life of the husband and wife, conditions arise in which the husband may commit an offense in his home and in the presence of his wife without her of necessity being a participant in the unlawful act. Art. 32, P. C., reads thus:

"A married woman who commits an offense by the command or persuasion of her husband shall in no case be punished with death, but may be imprisoned for life or for a term of years, according to the nature of the crime; and in cases not capital she shall receive only one-half the punishment to which she would otherwise be liable."

The precedents touching receiving stolen property are somewhat analogous as indicated by the following quotation from Bishop's Criminal Law, 9th Ed., Vol. 2, p. 847, sec. 1142:

"It is possible for husband and wife to incur joint guilt by a joint receiving; but this result will not follow under all circumstances in

which they would be jointly liable if single. . . . . According to general principles, as explained in the first volume, proof of a mere joint receiving, and no more, would be inadequate to convict the wife, while it would justify a verdict against the husband. But if the evi-. dence went further and showed affirmatively that the wife, being the more active one, was in no way influenced by the husband, she might be convicted of the receiving jointly with him."

Somewhat like the present on the facts is the case of Reed v. State, 93 Tex. Cr. R. 18, in which the accused was tried for the manufacture of intoxicating liquor at the home of Earl Henry. Mrs. Earl Henry was present, and the following is the substance of her testimony:

"Mrs. Henry testified that the whisky was made in a copper still on the cook stove in the dwelling-house in which she and her husband lived, which was a two-room house; that the cooking was done at night; that she retired before they got there; that on three different occasions this occurred; that she expressed to them no objection as they were friends of hers; that she neither invited them to come nor told them to leave; that she knew what they were coming for; that they used a tub belonging to her and her husband to bring water from a well on the premises used by her and her husband; that she was there and saw them make the whisky each time that it was made and was in conversation with them occasionally during the process."

In the original opinion of this court, written by Judge Lattimore, it was held that the witness was not only not an accomplice witness as a matter of law but that there was no issue of fact upon which the jury could find her an accomplice witness. From the opinion we quote:

"We find no evidence of any acting together as far as she was concerned. The case occupies a different attitude than it would if she had gone voluntarily with her husband or appellant to some place other than her home, where the crime was to be committed, in which case there might arise some inference of an acting together. Mrs. Henry, at the time this liquor was made, was at her home where her presence properly was, and she seems to have entirely refrained from any sort of participation in the acts of the men. The house was a small one, and it is true she did not run away but attended to her baby and then went to bed. In our opinion the trial court did not err in refusing to submit the issue of accomplice testimony."

It was not contended or suggested that Mrs. Henry was guilty as a principal offender but on motion for rehearing the court reached

the conclusion that her connection with her husband and Reed.in the commission of the offense was of such a nature that the jury would have been called upon to determine whether or not she was an accomplice witness requiring corroboration.

From the record it is apparent that the State regarded the husband as an actor in the commission of the alleged offense. It also appears from the record that he was under indictment both for the possession and the manufacture of the liquor that was found upon his premises. She being in the home, we are constrained to reaffirm our conclusion heretofore stated that the mere presence of the wife in her home under the circumstances developed from the record connecting her husband with the offense would not warrant her conviction as a principal. That to so hold her it would be essential that there be produced some evidence of an affirmative nature bringing her within the scope of the law of principals as defined in Chapter 1, Title 3, of the Penal Code.

The motion for rehearing is overruled.

*Overruled.*

### DISSENTING OPINION.

LATTIMORE, JUDGE.—To reverse this case upon the facts seems to me to be an unwarranted invasion of the rights and province of the jury as laid down in art. 657, C. C. P., which in exact words confer upon the jury the exclusive right of judging the credibility of witnesses and the weight of their testimony. It seems a transgression of the rule laid down in cases too numerous to mention to the effect that this court has no right to take the place of the jury and itself pass on the weight of the testimony, or reverse because the court might have rendered a different verdict from what the jury did. Johnson v. State, 83 Texas Crim. Rep. 61; Norwood v. State, 80 Texas Crim. Rep. 552.

My Brother Morrow suggests in his opinion on rehearing that this case is like that of Reed v. State, 93 Texas Crim. Rep. 18. If so, then on the reasoning of that case, beyond question the instant case should be affirmed. Examining that case which reflects the fact that Mr. Reed and Mr. Henry had been jointly engaged in the unlawful manufacture of intoxicating liquor, we observe that without contradiction the testimony shows that Mrs. Henry had gone to bed when her husband and Reed engaged in the illicit manufacture in her home. She swore positively, unequivocally and repeatedly that in no way, in not a single instance, did she aid, advise or encourage said men in

their illegal enterprise. No one contradicted her in the slightest or gave testimony to any word or act of hers aiding or putting forward the making of the whisky. Merely because it was her house in which the whisky was made; her stove on which the whisky was made; her tub in which the mash was put; her well from which the water was drawn, and that she was present in bed when the two men made the whisky, my Brother Morrow insisted upon the original presentation of that case that the jury had the right to say whether she had a guilty connection with the crime, and that the trial court had no right to take from the jury its right to pass on such fact question, and because the jury were not given such right in the charge,—that the case should be reversed. The members of this court have much respect and affection for its Presiding Judge, and in the opinion upon rehearing it was set out by Judge Hawkins that while the making of whisky once, under such circumstances, might not very strongly call for the submission of Mrs. Henry's guilty connection with the crime, yet when the evidence showed that at other times and under like circumstances the same offense was committed, the probability of a jury's conclusion of her guilty connection would be enhanced, and that to refuse to let the jury pass on whether she was so connected,— was reversible error. Without discussing the beauty and lustre of the jewel of consistency, it appears to the writer that if it was wrong in that case to deny to the jury their right to pass on the woman's guilt in a transaction where her liege lord and master was present with whatever coercive influence such presence might exert, he having charge of and putting forward the criminal expedition, how can it be that it is right to reverse in this case wherein the jury have said from her presence, etc., that she was guilty,—that in this case when the trial court let the jury exercise the right given them by statute of passing on the credibility of Mrs. Watson and the weight to be given her testimony, this court will not permit nor allow the exercise of that right to stand. If it was wrong for the court to take from the jury in that case the right to pass on the woman's guilty connection,—upon which entirely depends the question of her being an accomplice, because in that case the evidence showed whisky had been made at the Henry home at other times and before the occurrence in question,—equally here where appellant's own lips inform us that her mother persuaded her to leave her husband because he made and sold beer, and because she said: "That was when they caught us before and poured the mash out," and in which she testified that her

house was raided the year before the instant raid, and it was also shown that a bottle of beer on a table was half consumed when the officers went there on the instant occasion—I repeat, how can it be right to say that the jury's right to pass on such matters must be held in Reed's case inviolate but in the instant case after the jury have exercised their right, that this court will set it aside. Not only this, but in the case before us this appellant's husband was present at court, and when the case against him for possessing this same liquor was dismissed and he was tendered to the defense as a witness, they declined to use him. The State could not. The jury had the woman before them,—they did not have to believe a word of her testimony, —they had as much right to believe that she made the stuff,—and to the writer seemingly much more,—than we have to conclude that she did not legally possess it. While not in accord with Kipling that the female of the species is more deadly than the male, I am wholly unable to subscribe to the doctrine that if a man be alone in a house with a hundred bottles of beer or whisky, he may be convicted for possessing it for sale, but that if a woman under similar circumstances be convicted by a jury of her fellow citizens, this court will substantially direct that she be released and acquitted. The trial court entirely safe-guarded appellant's rights. He told the jury that her mere presence would not make her guilty. He told them that even if her husband possessed the liquor with her knowledge, they would not convict her unless they believed that she assisted and encouraged him in such unlawful possession, and if they had a reasonable doubt of this they would acquit. He told the jury that nearness or proximity would not constitute possession, and before they could find her guilty they must believe she had the actual custody and control of the liquor and had it for purposes of sale. He also gave the jury a charge on circumstantial evidence. A re-examination of this record more firmly convinces me that this case should not be reversed, but should be affirmed. I can only record my respectful dissent.